879 So.2d 335 (2004)
Gena Marie McKENZIE
v.
Jay Christopher CUCCIA.
No. 2004-CA-0112.
Court of Appeal of Louisiana, Fourth Circuit.
June 23, 2004.
*336 Daniel Becnel, III, The Law Office of Daniel E. Becnel, Jr., LaPlace, LA, for Plaintiff/Appellee.
Christine F. Remy, Lantz Savage, Christine Remy and Associates, Gretna, LA, for Defendant/Appellant.
(Court composed of Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO JR.).
EDWIN A. LOMBARD, Judge.
This is an appeal of a custody matter, wherein the trial court ordered joint custody of two-year old, Michael, denying the father's request for shared custody. For the reasons assigned, we affirm.

Statement of Facts and Procedural History
On January 9, 2002, appellee, Gena McKenzie ("Ms. McKenzie"), filed a Petition *337 to Establish Custody and Child Support for the minor child. On March 28, 2002, appellant, Jay Cuccia ("Mr. Cuccia"), filed a Motion for Joint Custody and Interim Visitation. On July 15, 2002, the trial court awarded the parties joint custody and designated Ms. McKenzie as the domiciliary parent. On August 6, 2003, the trial court appointed Dr. William Janzen (Dr. Janzen) to conduct a custody evaluation and make a recommendation to the court.
On August 8, 2003, Mr. Cuccia filed a Motion to Increase Visitation, for Right of First Refusal and to Claim Minor Child on Taxes. Pending the full custody hearing set for October 13, 2003, an interim Consent Judgment was rendered on September 16, 2003, in which the parties agreed to increase Mr. Cuccia's visitation to an alternating schedule of Thursday evening to Monday morning and Thursday evening to Friday evening.
A three-day trial of the entire matter commenced on October 13, 2003. Judgment was rendered on November 10, 2003. The trial court maintained domiciliary status with Ms. McKenzie and adopted the same weekly visitation schedule as set forth in the Consent Judgment of September 16, 2003. The judgment further implemented holiday and summer visitation schedules. The trial court ordered that the issue of visitation would be revisited in six months and the issue of the Right of First Refusal would be revisited at a later date.
Mr. Cuccia has filed this devolutive appeal, raising the following assignments of error: 1) the trial court erred in not awarding shared custody of the child; 2) the trial court erred in refusing to follow the recommendation of the court appointed expert; and 3) the trial court erred in not granting him the Right of First Refusal for visitation over a third-party caregiver.
The record before the trial court revealed the following pertinent information: Ms. McKenzie and Mr. Cuccia were never married. They had an intimate relationship, which produced the child, Michael, while Mr. Cuccia was engaged to his now present wife. Mr. Cuccia and his wife were expecting a baby within a few weeks following the trial. Mr. Cuccia also has an 18 year-old daughter from his first marriage. Adultery on the part of Mr. Cuccia was alleged in the break-up of that marriage. Mr. Cuccia has worked for the same company as a medical salesman for thirteen years. His work schedule is flexible but the job does require regular out of town travel. At the time of the trial, Mr. Cuccia was in the process of renovating a home and was planning a move in the near future.
Ms. McKenzie has never been married. She has worked as a nurse anesthetist at various hospitals. Ms. McKenzie normally works two twelve-hour shifts and one sixteen-hour shift per week. Ms. McKenzie testified that she tries to work most of her shifts when Michael is with his father. Otherwise, a nanny comes into the home to care for Michael. Ms. McKenzie revealed that she suffered with anorexia and depression as a teenager and that she currently takes a number of prescribed anti-anxiety and anti-depression medications.
Ms. McKenzie and Mr. Cuccia have not always enjoyed a civil relationship. There was one instance where police were called to resolve a domestic dispute. That incident occurred in the presence of the child.
Dr. William Bradford Janzen, the court-appointed psychologist, testified that it would be in the child's best interest to have a shared custody arrangement with a co-domiciliary status. Regarding the visitation schedule, Dr. Janzen suggested that one parent have the child on Monday and *338 Tuesday; the other parent would have Wednesday and Thursday, with alternating weekends.
Dr. Beverly Howze, the clinical psychologist hired by Ms. McKenzie when Michael was six months old, testified that after spending approximately fifteen hours on the case, she was of the opinion that shared custody was not in Michael's best interest. Specifically, she was concerned with the anxiety Michael displayed, difficulty separating from his mother, and the fact that he was non-verbal at age two. Dr. Howze further opined that Michael needed the stability of a primary residence and a primary caregiver at the present time. Dr. Howze recommended that Mr. Cuccia have Michael for only one overnight visit every other weekend until Michael developed further.

Discussion
An appellate court may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). The trial court's determination in establishing or modifying custody is entitled to great weight and will not be disturbed by an appellate court absent a clear showing of abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La.1988); Gill v. Dufrene, 97-0777 (La.App. 1 Cir.12/29/97), 706 So.2d 518, 521.

Assignment of Error No. 1
Mr. Cuccia argues that the trial court's refusal to implement a shared custody arrangement should be reversed because the evidence showed that shared custody was both feasible and in the child's best interest.
In any determination of child custody, the paramount consideration is the best interest of the child. La. Civ. Code art. 131. Pursuant to La. Civ.Code 134, the court shall consider all relevant factors in determining the child's best interest, including:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
Once joint custody has been found to be in the best interest of the child, a joint custody implementation order shall allocate the time periods during which each parent shall have physical custody of the child so *339 that the child is assured of frequent and continuing contact with both parents, and to the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally. La. Rev.Stat. 9:335. The trial court's finding that joint custody is in the best interest of the child does not necessarily require an equal sharing of physical custody. Collins v. Collins, 36,629 (La.App. 2 Cir. 10/23/02), 830 So.2d 448. Substantial time rather than strict equality of time is mandated by the legislative scheme providing for joint custody of children. Nichols v. Nichols, 32,219 (La.App. 2 Cir. 9/22/99), 747 So.2d 120. Every child custody case is to be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision that is in the best interest of the child. Id
In this case, the trial court determined that it was in the child's best interest to continue Ms. McKenzie as the domiciliary parent based on his finding that Michael needed a fixed schedule of physical custody and a primary residence. The trial court further found that Mr. Cuccia's life was in a state of flux, in that he was preparing to have a new baby and move from one house to another and, accordingly, it was in Michael's best interest to keep the custody and visitation schedule in place and revisit the issue in six months after Mr. Cuccia was settled with his new baby and new house. After a thorough review of the record, we are not persuaded that the trial court erred in finding that equal sharing of physical custody between the two parents was not in the best interest of Michael at this particular time.

Assignment of Error No. 2
Mr. Cuccia maintains that the court appointed expert recommended shared physical custody; and that the trial court committed legal error by not adopting that recommendation. The great discretion and deference granted to the fact-finder on appellate review extends to its assessment of expert testimony. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). After weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. It is within the trial court's discretion to substitute common sense and judgment when such a substitution appears warranted upon the record as a whole. Verret v. Verret, 34,982 (La.App. 2 Cir. 5/9/01), 786 So.2d 944. Further, a trial judge may substitute his/her own common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole. Raney v. Wren, 98-0869, 722 So.2d 54 (La.App. 1 Cir. 11/6/98); Goodwin v. Goodwin, 618 So.2d 579, 586 (La.App. 2 Cir.1993).
In the present case, the trial court exercised its great discretion in evaluating the experts' information along with the other evidence and deciding it was in the child's best interests to continue the status quo of joint custody with the mother as domiciliary parent. We find no evidence of any legal error on the part of the trial court in failing to implement Dr. Janzen's custody plan.
The trial judge stated on the record that he did not agree with Dr. Janzen's plan to switch the child between the parents every two or three days, finding instead that the child needed more stability. We find it significant to note that the trial court granted Mr. Cuccia more frequent visitation than recommended by Dr. Howze. After our own review or the evidence, we cannot say that the trial court's evaluation of the expert testimony and subsequent ruling was an abuse of its great discretion. Accordingly, we find no merit in Mr. Cuccia's second assignment of error.

Assignment of Error No. 3
Finally, Mr. Cuccia asserts that the law favors the Right of First Refusal, *340 in allowing visitation of a non-custodial parent over a third party caregiver. Specifically, Cuccia submits that the trial court erred in not allowing him to care for Michael instead of the nanny.
At the outset, we note that Mr. Cuccia has not presented this court with any jurisprudence in support of his third assignment of error, other than reiterating the law that generally recognizes the non-custodial parent's entitlement to reasonable visitation. The trial court recognized Mr. Cuccia's right to visitation and even encouraged the parents to be more cooperative and flexible in that respect. The trial court ruled, however, that the issue of Right of First Refusal would be revisited in the future. Given the trial court's finding and concern regarding the pending changes in Mr. Cuccia's life, as well as the developmental problems that Michael is experiencing, we find no manifest error or abuse of discretion in the trial court's decision to revisit this issue in the future.

Conclusion
For the foregoing reasons, the November 10, 2003, judgment of the trial court is affirmed.
AFFIRMED.